WALTER E. PREBLE & others *vs.* OSCAR S. GREENLEAF & another, executors.

Hampden.    September 25, 1901. — November 25, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Equity Jurisdiction.    Trust.*

A bill in equity will not lie by a *cestui que trust* to compel an accounting for trust property conveyed by the trustee in payment of his own debt to the defendant, who knew that it belonged to the trust, if the plaintiff consented to the conveyance either before or after the transfer was made. The only question is whether as a fact such consent was given. Here held that it was.

MORTON, J.    This is a bill in equity by the *cestuis que trust* under the will of one Lydia M. Preble to compel an accounting by the executors of one Orrick H. Greenleaf for certain stocks belonging to the trust estate conveyed by one of the trustees to said Greenleaf in payment of his own debt; Greenleaf knowing

that the stocks were trust property. The case was referred to a special master who made a report of the facts found by him, annexing thereto all of the evidence taken by him. Various objections and exceptions to the report were taken by the plaintiffs and the defendants, but they were all overruled by the judge, and the master's report was confirmed and a decree was entered dismissing the bill with costs. The plaintiffs appealed.

The master found amongst other things that the plaintiffs had suffered and permitted the trustee, who was their father, to act with reference to the property in question " as he desired and to use it as his own property . . . and have acquiesced in and consented to his use of the said stock in the manner in which he used it." The plaintiffs contended that the finding, that they " acquiesced in and consented to his use of the said stock in the manner in which he used it," was a conclusion of law, was repugnant to the findings of fact by the master, and was " not based on any evidence in the case and was contrary to the evidence." The judge ruled that the finding was a finding of fact and was warranted by the evidence.

The principal question in the case and the only one that has been argued by the plaintiffs is whether the finding that the plaintiffs consented to and acquiesced in the use of the stocks in the manner in which the trustee used them was warranted. We think that it was. The stocks referred to consisted of stocks in the Holyoke Paper Company, and the National Automatic Weighing Machine Company. The Paper Company stock stood in the name of Lydia M. Preble on the books of the corporation and a certificate was issued to her. Afterwards the stock was pledged by her husband, with her knowledge and consent, to raise money for use by him in his business. The defendants' testator assisted in procuring the loan thus obtained, and was liable therefor. Subsequent to Mrs. Preble's death this loan and another for which Mr. Greenleaf was also liable, amounting together to $79,000, were paid and settled by Mr. Preble by the transfer by him to Mr. Greenleaf of the Paper Company stock, and by his giving Mr. Greenleaf his note for the balance, $19,000, secured by the Weighing Machine stock. This last stock was purchased with money derived from the sale

and conveyance to the plaintiffs Alice R. and Grace M. Preble of real estate belonging to the trust estate and a mortgage of it by them. The certificates were issued to them and the stock stood in their names. There was testimony tending to show that the note of $19,000, above referred to, was settled and paid by the transfer to Mr. Greenleaf of the Weighing Machine Company stock and that the plaintiff Walter E. Preble took part in and urged the settlement on that basis. This of itself would justify a finding that so far as that stock was concerned he consented to and acquiesced in the use of it in the manner in which the trustee used it. There was also testimony tending to show that he took part in the previous settlement when the $19,000 note was given and the Paper Company stock was transferred in payment of the rest of his father's indebtedness to Mr. Greenleaf. This would justify a similar finding as to him in regard to the Paper Company stock. It is true that he denied that he took part in either one of those settlements and the plaintiffs contend that the testimony that he did was not entitled to belief. He also denied that he looked at the estate books or accounts when the transactions were recorded until some time after they took place. But the credibility of the witnesses and the inferences to be drawn from their testimony were matters for the master to pass upon, and his findings will not be disturbed unless plainly erroneous. The testimony to which we have referred is enough of itself to show, we think, that the finding cannot be set aside as plainly erroneous.

In addition, the master properly could consider the relations between Walter and his father, his opportunities for knowledge, the fact, admitted by him, that he knew that his father was using the funds of the estate, and the long delay in bringing suit after he discovered the wrongful use that had been made of the stocks.

As to the daughters, the other two plaintiffs, there was testimony tending to show that one of them had said that they knew of the transfer of the stock and that they consented to anything that their father did and that they were ready to do anything to help their father. The witness who testified to this was not positive that the other sister was present when this was said, but thought that she was. It appeared that the two sisters

were at the hearing before the master, but neither testified or was called to contradict this testimony. The plaintiffs imply that the testimony should be disregarded because of errors and inconsistencies in the cross-examination of the witness and for other reasons. But it was for the master to give the testimony such weight as he thought it justly entitled to. The testimony of a witness does not cease, as matter of law, to have any probative effect because there are or may be mistakes in it. It was a significant circumstance that neither one of the two sisters took the stand to contradict the testimony. There were also other circumstances which the master was justified in taking into account. After the mother's death the daughters and the father continued to live together as one family, apparently in the confidence and intimacy arising out of that relation. The father attended to all matters relating to the mother's estate. The daughters gave him powers of attorney not only to transfer stocks and collect dividends, but also to make deposits and open accounts and draw checks in their names. When the certificates of the Weighing Machine Company stock were issued they executed the transfers in blank and gave the certificates back to him. And when, according to his own statement, he told them of the transfer of the stocks in question to Mr. Greenleaf they do not appear to have made any objection. We do not see how it can be said that the finding of the master, that they consented to and acquiesced in the use of the stocks by their father in the manner in which he used them, was plainly erroneous.

The plaintiffs have not contended that the finding was not a finding of fact, as it clearly was.

If the plaintiffs consented to and acquiesced in the use that was made by the trustee of the stocks, it would be unjust to permit them to avoid the transfers on the ground that the property was trust property, and the trustee had exceeded his powers and Mr. Greenleaf had taken the stocks knowing that they were trust property. The plaintiffs were of full age and competent to act and must be presumed to have known what the law was and what their rights were. The case would be no stronger if it should appear that their consent was given after the transfers were made instead of before. Such a consent would be in the nature of a ratification and would have the same effect

as a consent given before the transfers were made. The plaintiffs' right to recover depends on their showing that they had a beneficial interest in the stocks to which of right they are still entitled. Their consent to the conveyance of the stocks operated to deprive them of that right whether it was given before or after the transfers were made, and it is immaterial whether Mr. Greenleaf knew of it or not. The doctrine of estoppel does not apply.

It seems to us that the decree was right and should be affirmed.

*So ordered.*

*L. O. Van Doren,* (*H. K. Hawes* with him,) for the plaintiffs.
*W. H. McClintock,* (*J. B. Carroll* with him,) for the defendants.