JAMES A. HOUSTON *vs.* PATRICK B. MAGRANE & others.

Suffolk.     April 15, 1912. — October 14, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & DeCOURCY, JJ.

*Sale,* Of good will.  *Name.  Equity Jurisdiction,* To enjoin use of name. *Corporation,* Change of name.

One named James A. Houston, having a valuable established business, of which a considerable asset was its good will consisting principally of the right to use the name "Houston" and the name "James A. Houston" in connection with such business, sold the business to certain purchasers under an agreement in writing, in pursuance of which he formed a corporation called the "James A. Houston Company," transferred all its capital stock to the purchasers, and conveyed to such corporation the business conducted by him "and all assets of every name and nature including the entire stock in trade . . . and the good will of the business, together with all trade marks, trade names . . . also the sole permanent right to use the name of James A. Houston in continuing the business now carried on by him, but reserving to himself the right to use the name of Houston (but not James A. Houston) as a part of any firm or corporate name." The purchasers as the stockholders of the corporation proposed to change the name of the corporation to "Magrane Houston Company," and the seller brought a bill in equity to enjoin such use of the name "Houston." *Held,* that the right reserved to the plaintiff to use the name "Houston" was not an exclusive right but was merely one to be used in common with the corporation, which owned the general right to use the plaintiff's name in continuing the business, including the right to use a part of the name in combination with other names, and that the plaintiff was entitled to no relief.

Whether under St. 1903, c. 437, §§ 5, 40, 41, the right of a corporation to change its name is subject to the control of the courts before any action upon the proposed change by the commissioner of corporations, here was referred to as a question which it was not necessary to consider.

BILL IN EQUITY, filed in the Supreme Judicial Court on February 28, 1912, to restrain the individual defendants and the defendant James A. Houston Company, a corporation, from using the name "Houston" as a part of any firm or corporate name and particularly as a part of the name "Magrane Houston Company," the rights of the parties depending upon an agreement in writing between the plaintiff and the individual defendants dated February 24, 1906, a copy of which was annexed to the bill.

The agreement is described in the opinion where its most mate-

rial provisions are quoted. An important averment of the bill also is quoted in the opinion.

The defendants demurred to the bill, and the case was heard by *Hammond*, J., who made a decree sustaining the demurrer. The plaintiff appealed, and, at the request of the plaintiff and with the consent of the defendants, the justice reported the case for determination by the full court.

The case was submitted on briefs to all the justices.

*S. J. Elder, I. R. Clark & G. F. Ordway*, for the plaintiff.

*J. H. Casey & N. N. Jones*, for the defendants.

SHELDON, J.   The rights of these parties depend primarily upon the terms of the agreement between the plaintiff and the individual defendants.   By that agreement the plaintiff was to form a corporation to be named "James A. Houston Company," and was to convey to that corporation the business then conducted by him in Boston, "and all assets of every name and nature including the entire stock in trade . . . all books used . . . in the business, mailing lists and the good-will of the business, together with all trade marks, trade names and bills and accounts receivable and cash on hand also the sole permanent right to use the name of James A. Houston in continuing the business now carried on by him, but reserving to himself the right to use the name of Houston (but not James A. Houston) as a part of any firm or corporate name." This agreement was carried out; the corporation was formed; and in accordance with the agreement the individual defendants bought of the plaintiff all the capital stock thereof, and now control the same.   They propose to change the name of the corporation to "Magrane Houston Company;" and the plaintiff denies their right to do this, and claims that neither the corporation nor they as its stockholders have the right to use in the name of the corporation or in the prosecution of its business the surname "Houston," but only to use the full name "James A. Houston."

The agreement evidently was written by a skilled draughtsman. It was drawn with great care and precision.   It provides in the broadest terms for the transfer of everything that had been connected with the plaintiff's business.   It expressly gives the right to use the plaintiff's name in continuing the business, and provides that this shall be a sole and permanent right; but it reserves to

the plaintiff the right to use, not his whole name, but only the last part of his name, and even this reservation is not for any business purpose without limitation but merely to be used as a part of any firm or corporate name. In a document so carefully and accurately drawn, it is material to observe, first, that the right given is a sole and permanent right, while that reserved is not so expressed; secondly, that the right given is not merely to use the words "James A. Houston," but to use the name of the plaintiff, James A. Houston, in continuing the old business, while the right reserved to the plaintiff is merely to use his last name in business in a strictly limited manner; that it does not appear that any other trade names than the names "Houston" and "James A. Houston" had been used in the plaintiff's business; and that the stipulation giving to the plaintiff a restricted right to use his last name is accompanied by the additional words "but not James A. Houston," while the right of the corporation to use the plaintiff's whole name is not correspondingly limited. When the parties intended that the use of one appellation should be exclusive of the other, they were careful to state that intention so as to leave no room for interpretation.

In the opinion of the majority of the court, this agreement did not give to the plaintiff an exclusive right, but merely one to be used in common with the general owner of the right to use the plaintiff's name in this business. If this were otherwise doubtful, it would be settled by the considerations already adverted to, especially since the general right given was in terms made sole and permanent, while those words appear to have been of set purpose omitted in the reservation made in favor of the plaintiff.

The provisions of R. L. c. 72, § 5, are not applicable here. The defendants have the written consent of the plaintiff to the use of his name by the corporation in its business. And the right given to the corporation was the full right to "use" his name in continuing the business, not merely to call itself by his whole name. He cannot complain that his name or a part of it is now coupled with other names. That is one of the lawful ways of using a name.

We are not impressed by the suggestion that the whole name of the plaintiff is a less accurate designation of himself as an individual than his patronymic alone would be, or that the former would be less readily recognized than the latter as indicating the

plaintiff. Even apart from the special circumstances of this case it would be difficult to say that a grant of the right to use one's whole name in carrying on a business did not include the right to use a part of that name.

Nor can the plaintiff have any relief on the ground that strangers or the general public may be led to fancy that he is or was engaged in a business with which he now has no connection; for this, so far as his patronymic was a trade name or an element of the good will of the business, is nothing more than was contemplated by the agreement. The names were part of the intangible assets for which he received the sum of $150,000 in addition to the fair market value of the tangible property. Indeed, the bill itself avers "that a very considerable asset of" the plaintiff's "business was the good will thereof, which consisted principally in the right to use the name 'Houston' and the name 'James A. Houston' in connection with said business." This is an allegation by which he is bound. But his agreement was to convey "all assets of every name and nature," "including the good will of the business, together with all trade marks, trade names," etc. It is impossible to say, upon the averments of the bill, that the right to use both the names "Houston" and "James A. Houston" was not given. The clause immediately following this grant could have had no other purpose than to make the right of the corporation to the use of the plaintiff's whole name in its business a sole one, while reserving to the plaintiff a concurrent right to use his last name as a part of any firm or corporate name, at least so far as this could be done without derogating from his grant of his good will. Certainly this clause must be construed together with the absolute grant which precedes it; it ought not, if this can be avoided, to be treated as cutting down the conveyance of all the assets including the good will and trade names. *A fortiori*, a forced construction ought not to be adopted to effect a purpose which we think contrary to the intention of the parties. The instrument must be "read in the light of the condition under which it was made" (Rugg, C. J., in *Coates* v. *Lunt*, 210 Mass. 314, 317); and one of those conditions is the conceded fact that the good will sold consisted principally of the right to use both of the names here in question.

We do not need to consider whether under St. 1903, c. 437,

§§ 5, 40, 41, the right of the corporation to change its name is subject to the control of the courts before any action upon the proposed change by the commissioner of corporations.

The majority of the court consider that the decree of the single justice must be affirmed.

*So ordered.*