EDITH R. REYNOLDS & another *vs.* FRANK E. REMICK
& others, trustees, & others.

Norfolk. December 6, 1954. — June 30, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Fraud. Probate Court*, Revocation of decree. *Trust*, Consent of beneficiary. *Guardian*, Guardian ad litem.

Reported evidence did not show to be plainly wrong findings by a judge of a Probate Court that there had been full disclosure of relevant facts to and no fraud practised upon or "overreaching" of a beneficiary of a testamentary trust by her brother, who was one of the trustees, in obtaining her assent to a decree of the court authorizing the trustees to transfer a store business and real estate of the trust to two corporations organized by them and to receive in exchange all the stock in the corporations, and in obtaining her assent to a subsequent sale by the trustees to the brother of the stock in the corporation operating the store and to a decree allowing an account of the trustees accurately setting forth the sale of the stock; and a petition by the beneficiary for revocation of such decrees for alleged fraud of the brother was properly dismissed. [8-10]

One not yet born at the time of entry of decrees of a Probate Court pertaining to a testamentary trust and assented to by guardians ad litem appointed to represent unborn persons who might become interested in the trust was bound by the guardians' assents. [10]

PETITION, filed in the Probate Court for the county of Norfolk on July 24, 1952.

The case was heard by *Reynolds, J.*

*Frederick M. Schlater* of New York, (*Daniel J. O'Connor* with him,) for the petitioners.

*Paul C. Reardon,* (*Lewis L. Wadsworth, Jr.,* with him,) for the respondents.

WILLIAMS, J.   This is a petition, filed in the Probate Court on July 24, 1952, for revocation of a decree of that court entered April 14, 1941, allowing the first account of Frank E. Remick and others as trustees under the will of Alfred H. Remick, late of Quincy.   The petitioners are Edith R. Reynolds, a beneficiary of the trust, and Jonathan Reynolds, her minor son, for whom she appears as "natural guardian" and next friend.   The respondents are three of the trustees who filed the account and the executors of the will of Herbert E. Curtis, a fourth trustee who died October 29, 1947.   By an amendment to the petition, allowed on April 14, 1953, it is also sought to obtain the revocation of a previous decree entered October 25, 1938, allowing the trustees to transfer the assets of the trust to two corporations organized by them.   The case is here on the appeal of the petitioners from a decree sustaining certain pleas of the respondents contained in a pleading entitled "Second Substitute Plea in Bar" and dismissing the petition.

Alfred H. Remick died on September 12, 1930, leaving as heirs his widow, Alice M. Remick, two daughters, Mary C. Remick and Edith Remick, now Edith R. Reynolds, and a son, Frank E. Remick.   By his will he devised and bequeathed all of his estate after the payment of debts to four trustees, Alice M. Remick, Mary C. Remick, his brother William F. Remick, and a friend, Herbert E. Curtis, in trust to pay one half of the net income to his wife for her life, "but only so long as she shall remain my widow"; and to pay the remainder of the net income in equal shares to his three children.

He directed that the trust should continue until his son Frank reached the age of thirty and thereafter upon the death or remarriage of his widow should terminate "as to all property contained therein except the business conducted

under the name of the Remick Company, the personal prop-
erty thereof and the land and buildings whereon the same
is conducted; as to such property thus released from the
trust, the same shall be divided equally between my chil-
dren, the children of any deceased child taking parent's
share by right of representation. The personal property and
real estate of the business of the said Remick Company shall
continue subject to said trust under the jurisdiction of said
trustees, who shall thereafter pay over to my said son fifty
per cent of the net income derived therefrom and shall
pay to each of my said daughters twenty-five per cent of
the net income derived therefrom and in the event of the
death of any of my said children leaving issue, their chil-
dren shall take parent's share of said income by right of
representation . . . ."

"In the event that in the opinion of my said trustees it
becomes expedient and desirable that said business or any
portion thereof and any property real or personal employed
in connection therewith, should be sold at any time prior
to the termination of the trust and the proceeds in whole
or in part are not, in the opinion of the trustees necessary
for the continuance of the business, then I direct that such
proceeds be divided equally between my children and widow,
if she be then living and unmarried, in the proportion of
one-quarter to each . . . .

"In the event that my trustees deem it advisable and
expedient to sell said business and the property connected
therewith in whole or in part, the same shall not be sold
without first obtaining the consent thereto in writing of my
son Frank Edward Remick."

"In the management of said estate, I direct that my said
trustees shall have full power to convey real and personal
property without securing license or authority of any court
so to do, and shall have full power and authority to continue
my business now being conducted in said city of Quincy;
and in the conduct of said business, it is my desire that my
son shall have the direction and management of said busi-
ness and that his salary for the first year of such employ-

ment shall be four thousand dollars ($4000), for the second year, six thousand dollars ($6000) and for the third year and thereafter, ten thousand dollars ($10,000). It is not my intention, however, to restrict the salary of my said son to these sums, if in the opinion of the trustees the services rendered by him are entitled to a larger compensation."

"Upon my said son arriving at his thirtieth birthday, I then appoint him and my daughter Edith to be trustees under this will to serve with the trustees herein named."

The business to which reference was made consisted of a store for the sale at retail of men's and boys' clothing and furnishings located on Hancock Street, Quincy, in the center of the city's commercial district upon land owned by the testator. At the time of the testator's death his widow was fifty-six, his daughter Mary twenty-six, his daughter Edith twenty-four, and his son Frank twenty; all of the children were unmarried. Frank was in college. Later both Frank and Edith married but Mary remained single. Edith has now two children, Nancy born July 15, 1938, and Jonathan, who is one of the petitioners, born February 13, 1942. Frank, with the consent of his mother and sisters, was appointed trustee on May 17, 1935, when William Remick resigned. Frank reached the age of thirty on September 26, 1939. Although it was provided in the will that on that event Edith should become a trustee, it appears that she never qualified or acted as such.

On October 19, 1938, the trustees, Alice M. Remick, Mary C. Remick, Frank E. Remick and Herbert E. Curtis, filed a petition in the Probate Court for permission to establish two corporations, one to own and operate the store, and the other to own and operate the real estate. The essential details of the plan for incorporation were fully set forth in the petition. The widow and the three children signed their names in evidence of their assent to the petition under a clause reading, "We have examined the foregoing plan and approve the same and authorize Frank E. Remick to proceed to have the provisions of the plan carried out and put into effect." The petition was also assented to by an

attorney appointed "as the next friend of all persons not ascertained, or not in being, who are or may become interested in said estate," and as guardian ad litem for the two children of Frank, and for Nancy, the child of Edith. A decree was entered on October 25, 1938, declaring that the "incorporation, sale, conveyance and transfer [to the corporations] are necessary, expedient and most for the interests of all concerned in said trust," and authorizing the trustees to organize two corporations as set forth in the plan, to convey to them the trust property, and to receive in exchange all of the corporate stock.

In pursuance of this decree two corporations were organized, one the Remick Company, Inc., which took over the store as a going concern and the other the Remick Realty Company to which the real estate was conveyed. The officers in each corporation were the widow who was president, Edith, who was vice-president, Mary, who was clerk, and Frank who was treasurer and general manager. The stock was held by the trustees.

On August 1, 1939, the trustees sold to Frank all of the stock of the Remick Company for an amount which approximated its book value as of November 30, 1938, namely $132,000. Payment for the stock was made in accordance with the terms of an agreement under seal executed by Frank, his mother and sisters on the previous June 30, wherein it was provided that Frank should pay his mother $5,000 annually during her life, all sums received by her as president of the Remick Company, Inc., to be credited on such payments, and that he should pay to each of his sisters a total of $33,171.66, in annual payments with interest at five per cent on unpaid balances, all sums received by them as compensation from the Remick Company, Inc., to be credited on such payments as in the case of his mother. Of the purchase price only $5,000 was to be paid directly to the trustees. There were other provisions in the agreement respecting the security which Frank should furnish for the payment of these amounts. After the incorporation of the two companies leases were executed by the Remick Realty

Company to the Remick Company, Inc., the most recent of
which was for fifteen years from January, 1948, with an
option of renewal for ten years.

In the first account of Alice M. Remick, Mary C. Remick,
Frank E. Remick, and Herbert E. Curtis, who were the
trustees at the time of the sale of the stock to Frank, the
transaction was recorded in schedule B, item 3, as follows:

"8/1/39   Loss on Sale 1000 Shares Remick Company
          Stock
               Cost        132,686.64
               Realized      4,994.00[1]      127,692.64"

The account was for the period beginning with March 1,
1935, and ending with January 31, 1940.  Its allowance was
assented to in writing by the widow and the three children
as well as by a guardian ad litem, appointed to represent
unborn or unascertained persons.  A decree was entered
allowing the account on April 14, 1941.

In 1949 Edith brought a bill in equity in the United
States District Court to recover from Frank profits alleged
to have been made by him through the purchase of the
stock.  The suit was dismissed on February 10, 1949, for
want of jurisdiction.  See *Reynolds* v. *Remick,* 82 Fed. Sup.
281.  On February 18, 1949, Edith and Nancy and Jonathan
Reynolds by their mother as next friend filed a petition in
equity against the trustees in the Probate Court to revoke
the decree of April 14, 1941.  The petition was dismissed
on demurrer and no appeal taken.  On February 14, 1950,
Edith and Nancy again petitioned for revocation by the
Probate Court of the same decree.  On appeal we held that
as to Nancy the decree should be revoked, if a certain
amendment to the petition was allowed, because of the
failure to serve upon the child notice of the petition for
the allowance of the account.  *Reynolds* v. *Remick,* 327
Mass. 465.

---

[1] The discrepancy between the amount of $5,000 which was to be paid to
the trustees and the figure of $4,994 appearing in the account was presumably
due to a deduction for a stamp tax.

The present petition, in the character of its averments, is similar to the preceding bill and petitions. It alleges that the sale of the stock of Remick Company, Inc., was illegal and improper; that Frank procured the assent of Edith R. Reynolds to the transaction and to the trustees' account by false and fraudulent means; that the account was falsely and fraudulently misrepresented to the court; that Frank "overreached" Edith who was inexperienced and ignorant of business affairs and who relied upon and trusted him; that since the sale Frank has made large profits from the business; that the leases from the Remick Realty Company to the Remick Company, Inc., constituted a fraud on the petitioners and other beneficiaries because of the inadequacy of the rents; and that Frank has made wasteful and imprudent expenditures on the property since 1939. It is prayed that the decrees of April 14, 1941, and of October 25, 1938, be revoked; that the sale of the stock to Frank be declared null and void and the shares be ordered returned to the trustees; that the leases whereby he benefited personally be cancelled; that he account for the value of the use and occupation of the real estate since August 1, 1939; and that he be charged for trust funds expended on improvements for his use and benefit.

The respondents filed a pleading entitled "Second Substitute Plea in Bar" in which the following eight reasons for denying the petitioners relief are set forth: 1. The decree entered on January 9, 1950, is res adjudicata of the issues. 2. Edith and Jonathan are barred from relief from the acts incorporating the business and real estate by their assents to the petition for incorporation and the decree of October 25, 1938. 3. They are barred from revocation of the decree of April 14, 1941, by their assents to the account and by the entry of the decree. 4. Edith is barred from revocation of both decrees by her assent to the acts of the trustees and releases given to the trustees. 5. Jonathan is barred from objecting to the sale by distribution of the proceeds to the then life beneficiaries. 6. Edith and Jonathan are barred from complaining of acts of the trustees

after January 31, 1940, because accounts of these acts are on file and the petitioners have objected to their allowance. 7. The respondents deny fraud, misrepresentation, or improprieties alleged in the petition. 8. Laches. No objection has been made to the form of this plea.

The judge apparently construed this pleading as presenting eight separate pleas in bar and heard the case on the issues therein raised. His findings are incorporated in his decree (Curley v. Curley, 311 Mass. 61, 67) and in substance are as follows: The acts of the trustees in connection with the incorporation of the "businesses" "were reasonable and proper and in the best interests of the estate and all persons interested therein or who might thereafter become interested therein." Edith R. Reynolds consented to and authorized these acts including the execution of the lease of November 23, 1938. There was a full disclosure of the plan to her and no fraud or misrepresentation in reference to the proposed transfer of assets to the corporation or in connection with her assent to the decree of October 25, 1938. The stock of the Remick Company, Inc., was sold to Frank at a fair price and upon fair terms and there was a full disclosure of all relevant facts to Edith and no fraud or misrepresentation. She assented to the price and terms with full knowledge of the facts and released the respondents individually and as trustees from any claims arising from the sale. There was no fraud or misrepresentation in obtaining her assent to the first account. It was given after full disclosure of the facts and with full knowledge and understanding of the transaction to which it related. The account "reflected accurately the manner and method by which the Remick Company, Inc., stock was sold to Frank E. Remick." The judge ruled that Jonathan Reynolds, who was not born until February 13, 1942, is bound by the assent of the respective guardians ad litem to the allowance of the decrees, "after full disclosure to them and without fraud or misrepresentations." He sustained the pleas numbered 2, 3, 4, 5, and 8, and ordered that the petition be dismissed.

An examination of the evidence, which is reported, and of the exhibits which include much correspondence between Frank and Edith relating to his purchase of the stock, shows that the findings of the judge were not plainly wrong. There can be little doubt that the trustees exercised sound business judgment in deciding to administer the trust through corporate agencies. Edith was fully aware of the reasons for incorporation and seems to have assented to the establishment of the corporations without question as to its advisability. Later she had serious doubts whether she should assent to the sale of the stock to Frank. At the time, she was living in Texas where her husband was in business. He advised her not to assent. It was only after the exchange of many letters between her and Frank that she finally determined to approve the sale. She presumably was influenced by the fact that her mother and sister Mary agreed to it and that her father wished Frank to control the business. Although she assented with reluctance it is clear from the letters that she was fully cognizant of all the facts and that there was no "overreaching" by Frank. She made up her mind, after carefully balancing the advantages and disadvantages to her of Frank's proposition to purchase, that her interests were best served by giving her assent.

We are not primarily concerned with whether the evidence warrants findings that the respondents committed breaches of trust either in incorporating the businesses or in selling the stock to Frank. While unrevoked the decrees as between the parties are res judicata of the issues thereby adjudicated. To justify revocation of decrees it is not enough to show that available evidence was not offered, that material contentions were not properly presented, or that the issues were not rightly decided. *Gale* v. *Nickerson,* 144 Mass. 415, 419. *Zeitlin* v. *Zeitlin,* 202 Mass. 205, 207. *Renwick* v. *Macomber,* 233 Mass. 530, 534. *Holyoke National Bank* v. *Dulitzky,* 273 Mass. 125, 126–127. *Kennedy* v. *Simmons,* 308 Mass. 431, 432–433, and cases cited. That fraud in the presentation of a case is not ground for revoca-

tion of a decree applies to Probate Courts, with the following exceptions. A court may correct a manifest error in a decree. It may revoke a decree procured by fraud which induced the court to take a jurisdiction which it did not have. And it may revoke a decree where fraud has operated to deprive an interested party of his day in court. *McLaughlin* v. *Feerick*, 276 Mass. 180, 182–183. The petitioners apparently seek to bring their case within the sweep of this last exception. It is Edith's contention that she was induced to assent to the decrees by the fraud of her brother Frank and thereby was deprived of a right to present to the court evidence of breaches of trust on the part of the trustees. It seems to us plain that the finding that no fraud was practised upon Edith is fully and adequately supported by the evidence.

If a beneficiary consents to an act by the trustee which would constitute a breach of trust toward the beneficiary, the beneficiary cannot hold the trustee liable for the consequences of the trustee's acts "if the beneficiary was sui juris and had full knowledge of all relevant facts and of his legal rights and if his consent was not induced by any improper conduct of the trustee." Scott on Trusts, § 216. Restatement: Trusts, § 216. *Pope* v. *Farnsworth*, 146 Mass. 339, 344. See *Preble* v. *Greenleaf*, 180 Mass. 79; *Lipsitt* v. *Sweeney*, 317 Mass. 706. Edith's assents to the decrees were the formal expressions of a consent previously given after "full knowledge of all relevant facts." The finding of no fraud was not plainly wrong and must stand. *Johnson* v. *Kerns*, 247 Mass. 92, 99. The copetitioner Jonathan was not born at the time of either decree. He is bound by the assents to the decrees of the guardians ad litem appointed to represent parties in interest "not in being." *Walsh* v. *Walsh*, 116 Mass. 377.

We need not discuss the question of laches as apart from laches we are of opinion that the petition should be dismissed.

*Decree affirmed.*